
Exhibit I

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN THE MATTER OF THE<br>EXTRADITION OF MICHAEL L.<br>TAYLOR | ) ) ) ) | Case No. 20-mj-1069-DLC |
| IN THE MATTER OF THE<br>EXTRADITION OF PETER MAXWELL<br>TAYLOR | ) ) ) ) | Case No. 20-mj-1070-DLC |

## DECLARATION OF DR. WILLIAM B. CLEARY

Pursuant to 28 U.S.C. § 1746, I, William B. Cleary, hereby declare as follows:

1.     My name is William B. Cleary. I am an adult citizen of the United States, and a practicing attorney and law professor in Japan. I reside in Hiroshima, Japan. I have lived and worked continuously in Japan since 1993. Prior to that, from October 1983 until June 1990, I lived in Sapporo, Japan as a Japanese Government (Monbusho) Scholarship recipient. I am making this declaration in connection with the above-captioned matters, not as an advocate, but to assist the Court in understanding Japanese criminal law which is relevant to these cases.

2.     I have a bachelor's degree from the United States International University and a juris doctor from California Western School of Law, both located in San Diego, California. I also hold L.L.M. and Ph.D. degrees in Japanese Public Law from Hokkaido University in Sapporo, Japan. The focus of my doctoral work was Japanese criminal law and procedure.

3.     Since April 2008, I have been employed as a Tenured Professor of Comparative and Foreign Law at Hiroshima Shudo University in Hiroshima. Prior to my tenure at Hiroshima Shudo University, I served as a professor at Iwate University in Morioka, Japan, and the College of International Studies at the University of Tsukuba in Ibaraki, Japan. As a professor, I have taught courses in, among other things, Japanese criminal procedure, a subject I have taught for

four years. It is to be noted that the subject of criminal procedure is an important subject and is tested on the Japanese bar examination. I was a tenured associate professor at Iwate University at the time, 2004 to 2008.

4.    In addition to my academic work, I have practiced law as an attorney with various firms, including Blakemore & Mitsuki in Tokyo and Fried Frank Harris Shriver and Jacobson in New York. From 2000 to 2002, I served as a Japanese law expert advising and assisting the U.S. Forces Japan command at Yokota Air Force Base. I also previously worked as an Assistant Attorney General in the Civil Division for the Government of Guam. In that capacity, I served as an administrative hearing officer and adviser to several government agencies.

5.    A copy of my *curriculum vitae* is attached hereto as Exhibit A.

6.    I have been asked to review the facts alleged in these matters and to provide an expert legal opinion to assist the Court in understanding relevant provisions of Japanese law, including how those provisions are understood and interpreted.

7.    Specifically, I have been asked to render an opinion on whether the allegations against Michael L. Taylor and Peter M. Taylor—who allegedly assisted Carlos Ghosn in traveling from Japan to Lebanon—would, if true, constitute a violation of Article 103 of the Japanese Penal Code. As detailed more fully herein, they do not. In fact, Mr. Ghosn's act of breaching the terms of his release in Japan is not an offense under Japanese criminal law.

8.    The Complaints in these matters assert that the Taylors have "been charged under Article 103 of the Japanese Penal Code with enabling the escape of Carlos Ghosn Bichara ('Ghosn'), who was indicted in Japan for financial crimes and had been released on bail pending his trial." (Complaint ¶ 5.)

9.    With respect to the status of Mr. Ghosn at the time of the alleged events, the

Complaints allege specifically as follows:

> On April 25, 2019, the Tokyo District Court released Ghosn on bond with
> conditions that included, among other things, (i) living in the house in Tokyo
> specified by the bail conditions; (ii) when summoned, reporting to a designated
> location or notifying the court, in advance, of the reasons that he is unable to
> report; (iii) not hiding or fleeing; (iv) obtaining advance approval for the court for
> any domestic trips lasting three days or more; and (v) not taking any overseas
> trips. By fleeing Japan pending trial, Ghosn violated his bail conditions.

(Complaint ¶ 7(b).)

10.    Violating one's bail conditions, such as those alleged in the Complaint, or
"jumping bail," as Mr. Ghosn is alleged to have done, is not a criminal offense in Japan. Articles
97 (titled "Escape") and 98 (titled "Aggravated Escape") of the Japanese Penal Code make it a
criminal offense for a person *who is confined* on a judge's order (or, under Article 98, held under
a subpoena) to escape, but these statutory provisions apply to persons who are confined or
detained in a prison, jail, or other such detention facility. These statutes do not apply—nor have
they ever been applied—to individuals who are released on bail.

11.    The fact that "jumping bail" is not a crime in Japan has been widely recognized
by Japanese officials, legal commentators, and the Japanese media. In fact, in the wake of Mr.
Ghosn's departure from Japan in December 2019, there have been a number of articles on this
very subject, discussing the fact that bail jumping is not illegal in Japan and that the Japanese
government is considering adopting new laws that *would* make bail jumping a criminal offense.
I have attached as Exhibits B through F examples of articles on this subject, from both before
and after Mr. Ghosn's departure, all of which clearly acknowledge that bail jumping is not a
crime in Japan.

12.    Article 103—the provision that Japan apparently alleges that the Taylors
violated—makes it a crime to harbor or enable the escape of another person who has either
committed a crime punishable with a fine or greater punishment or has escaped from

3

confinement.

13.     To my knowledge, prior to the arrest warrants issued for the Taylors, the Japanese government has never attempted to apply Article 103 to any situation involving violation of bail conditions. Article 103 has never been interpreted or understood to encompass such a charge. Indeed, I have not been able to identify a single prior case where Japanese prosecutors charged a person (successfully or unsuccessfully) with enabling another person to violate his or her bail conditions.

14.     Article 103 does not apply to assisting a person to violate the terms of his bail conditions. It only applies to harboring or enabling a person *to escape* from either confinement (that is, like Article 97, confinement within a prison, jail or other detention facility) or being arrested by the police, or harboring or enabling a person to avoid arrest *after they have escaped* from confinement.

15.     Article 103 simply does not prohibit assisting someone to violate his bail conditions. That is not within the scope of the "escape" which Article 103 prohibits harboring or enabling, which follows from the fact that bail jumping is itself not prohibited by Article 97 or any other provision of the Japanese Penal Code. It would be Illogical to criminalize assisting someone to do something that is not criminal. It would also be inconsistent with Article 63 of the Japanese Penal Code, which provides that an accessory to a crime must receive a lesser punishment than the principal. Simply put, it would be incongruous for the law to impose a criminal punishment on the Taylors for assisting Mr. Ghosn in doing something for which he could not personally be held criminally liable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4

Executed on May 25, 2020

William B. Cleary



William Bernard Cleary

Education

Ph.D. (1990 March). *Japanese Public Law*-Hokkaido University. Three-year course in Japanese Public Law under the direction of the late Dr. Hiroyuki Nose; major field of study - Japanese criminal procedure, minor field of study - Japanese civil law and comparative law. Title of dissertation: "The Law of Criminal Procedure in Contemporary Japan."

LL.M (1987 March). *Japanese Public Law*-Hokkaido University. Major research: The law of negligence, both criminal and civil; professional negligence, products liability, and industrial accidents.

J.D (1978 May), California Western School of Law, San Diego, California.
Apprentice for the Appalachian Research and Defense Fund, Charleston, West Virginia; major field of practice - mental health law and the right to treatment for mental patients in West Virginia.

B.A   (1975 June). United States International University, Diversified Major, San Diego, California.

Teaching Experience

Hiroshima Shudo University, Tenured Professor of Comparative and Foreign Law, April 2008 to present. Subjects taught: Comparative Law, Foreign Law, and American Law (in Japanese).

Iwate University, Tenured Associate Professor of Comparative Law, April 2004 to March 2008.
**Subjects taught: Japanese Criminal Procedure (in Japanese).**

College of International Studies, University of Tsukuba, Ibaraki, Japan; Visiting Professor of Law, April of 1993 to March 2000. Subjects included Introduction to Law and U.S./Japan Comparative Law. Also taught Debating, Discussion Seminar 11, International Political Economy, and Human Rights and Refugees, Also, conducted seminars on Japanese Law, and student advisor for foreign and Japanese students.

Attorney Experience

2000 to 2012 Blakemore & Mitsuki, Tokyo, Japan . Handling international corporate matters, contracts, securities, securitizations, litigation, and labor related matters.

**2000 to 2002 USFJ-Yokota Air Force Base-Japanese Law Expert providing in depth research and reporting to the Command.**

1993 to 2000, Tokyo City Law and Tax Partners; Of Counsel, providing international legal support for a variety of international business transactions, including: real estate matters, business matters, international licensing agreements, personnel and litigation issue, and motion picture production matters.

1991-93  Associate Attorney, Klemm, Blair, Sterling and Johnson, Agana, Guam.  Specialized in real estate transactions and construction law matters for several major Japanese construction companies and banks. In addition, worked as consultant to Sumitomo Construction Company on various corporate matters, including employment discrimination, recruitment and termination issues, and government relations and public relations.

1990-91  Associate Attorney, Fried Frank Harris Shriver and Jacobson, N.Y.C. Worked with Japanese companies on various real estate transactions and development projects in the New York area. Assisted

officials at Japan Airlines Inc. concerning negotiating a long term lease with the Port Authority of New York & New Jersey for a state of the art cargo handling facility at John F. Kennedy International Airport.

1981-83    Assistant-Attorney General, Civil Division, Government of Guam.  Served as an administrative hearing officer and adviser to several government agencies, including the Contractor's Licensing Board and Civil Service Commission.

1979-81    Legislative Counsel, Kosrae State Legislature, Federated States of Micronesia, and advisor to the Honourable Gaius F. Nedlic. Duties included the drafting of new legislation dealing with a variety of local matters, writing committee reports, and organizing the State and National Leadership Conference for the Federated States of Micronesia.

Attorney Qualifications
    *California, New York, FSM - Micronesia, & Guam*

Public Presentations-Conferences

July 1999, Tokyo, Japan; The Kabuto Yama Case; a comparison of Japanese and
U. S. criminal procedure with particular emphasis on racial discrimination and racial hoax. (In Japanese)

January 1999, Osaka, Japan, The Kabuto Yama Case; a comparison of Japanese and U.S. criminal procedure with particular emphasis on the right of prosecutorial appeals. (In Japanese)

November 1997, The 24th International Student Seminar at Inter-University Seminar House (Hachioji, Tokyo); title of conference, "The Expected Role of the United Nations in the 21st Century," - co-chaired with Dr. Hideo Sato a three-day discussion seminar focusing on United States - Japan relations in the United Nations system.

May 1997, Tsukuba Institute, Ibaraki, Japan; conducted a three-hour lecture on United States and Japanese patent law with a detailed comparison of recent trends and landmark cases. (In Japanese)

June 1996, Sandoz Pharmaceuticals, Ltd., Tsukuba Research Institute; delivered a two-hour presentation concerning cross-cultural differences to a group of 40-50 physicians, pharmacologists, toxicologist, and biologists, etc.

August 1996, The European Institute of Japanese Studies, Stockholm, Sweden; Title of conference, "Japanese Influences in Asia." Invited as a guest participant to deliver a paper entitled, " The Legal System of Japan and Its Influences in the Region," which described in detail the historical influence of the Japanese legal systems on other Asian countries, particularly South Korea, Taiwan, and China.

February 1995, Tokyo Bar Association; made a two-hour presentation to a group of Japanese attorneys on attorney ethics and matters related to attorney discipline in the United States. (In Japanese)

January 1995, Sapporo Bar Association; made a two-hour presentation to a group of Japanese attorneys on attorney ethics and matters related to attorney discipline in the United States. Included in the presentation was a discussion of engagement letters, declination letters, fees, and areas of legal specialization. (In Japanese)

Publications (Articles) -in English

1. The Use of GPS Tracking Devices for Criminal Investigations in Contemporary Japan.  Hiromira Law Review, Hiroshima Shudo University (December 2017)
2. The Law of Liability in Contemporary Japan to Third-Parties for Damages Caused by People with Dementia: A Review of the Tokai JR Supreme Court Case of March 1, 2016.  Shudo Hogaku (Shudo Law Review) Vol. 39 No.2 (February 2017)
3. Parental Kidnapping and Multiculturalism: A Focus on Japan.  Shudo Hogaku Vol. 35  No. 2, pp. 127-143.  February 2013.
4. The Use of Confessions in Contemporary Japan.  Shudo Hogaku Vol. 33  No. 1,  pp. 39 - 54.  September 2010.
5. The Law of Criminal Negligence in Contemporary Japan, Part III.  Artes Liberales No. 79, Iwate University, Faculty of Humanities and Social Sciences, June 2006.
4. The Law of Criminal Negligence in Contemporary Japan, Part II;  Artes Liberales No. 78, Iwate University, Faculty of Humanities and Social Sciences, December 2006.
5. The Law of Criminal Negligence in Contemporary Japan, Part I;  Artes Liberales No. 77, Iwate University, Faculty of Humanities and Social Sciences, December 2005.
6.  The Law of Double Jeopardy in Contemporary Japan;  Artes Liberales No. 76, Iwate University, Faculty of Humanities and Social Sciences, June 2005.
7. The Law of Entrapment in Contemporary Japan, Part I;  Artes Liberales No. 75, Iwate University, Faculty of Humanities and Social Sciences, December 2004.
8. Lawyers' Ethics and the Mass Media, August 1, 2003, (Publication in Memorial of Dr. Hiroyuki Nose); Shinyama Publishing, ISBN: 4797230711
9. Police, Prosecution, and Violence in Contemporary Japan, International Criminal Justice Review, Volume 13, 2003, pp. 181-186.
10. The Law of Criminal Procedure in Contemporary Japan Part III, Hokkaido University Law Review, January 1991, Volume 42 No. 1. Pp. 360-404 December 1991.
11. The Law of Criminal Procedure in Contemporary Japan Part II, Hokkaido University Law Review, Volume 41 No. 4.  March 1991.
12. The Law of Criminal Procedure in Contemporary Japan Part I. Hokkaido University Law Review, November 1991, Volume 41- 3. Pp. 454 – 512. January 1991.
13.  Criminal Investigation in Japan,  California Western Law Review, Volume 26, Number 1, 1989-1990.
14. Problems with U.S. Jury System and the Americanization of Japan,  Comparative Law Journal, Volume 56, December 1994.

## Publications-in Japanese

1. Attorneys and the Mass Media *("bengonin no media e no ikenhyomei wa douarubekika?")* Quarterly Keiji-Bengo, No. 3 1, Autumn. 2002, p. 128.

2. Translation of "Death Row - AIDS is Turning a Prison Term into a Potential Death Sentence," by Harmeen Rowe, published by Ushio, October 1988, pp. 136-141.

3. Translation of "Police Taping of Investigative Interviews," published in Hanrei Jiho, August 11, 1986, No. 1195.

4. Translation of "Euthanasia in the Netherlands," published in the Sapporo Gakuin Law Review, February 1995, Volume 11-2.

## Chapters in Books

1. Title of Book: Women in Law, published by Greenwood Press 1996, Edited by Rebecca Mae Salokar and Mary L. Volcansek. Contributed the chapter on Takako Doi, an account of her life and accomplishments.

2. Title of Book: Constitutional Systems in Late Twentieth Century Asia, edited by Lawrence W. Beer, published by University of Washington Press, 1992. A translation of Professor Nobuyoshi Ashibe's manuscript entitled, "The United States Constitution and Japan's Constitutional Law."

Languages: Japanese



ALL GENRES

# Evident flaws in system for releasing offenders on bail before prison

*7:56 pm, June 25, 2019*



**The Yomiuri Shimbun**

The latest case of a fugitive criminal must be criticized as extremely deplorable. The incident was the fault of the prosecution.

Despite his sentence of imprisonment having been finalized after he was released on bail, the man in question fled to avoid being jailed. The fugitive was arrested by the Yokohama District Public Prosecutors Office on suspicion of obstructing the discharge of an official duty. It took as many as four days to apprehend him after his flight.

While he was on the run in Kanagawa Prefecture, public elementary and junior high schools run by local governments in areas surrounding the scene of his escape were forced to suspend classes for two days. The incident also affected the day-to-day lives of local residents, as shown by the fact that weekend events were canceled.

Public prosecutors must bear a grave responsibility for having caused anxiety among community residents. They should seriously reflect on their mistake.

After his unsuspended prison sentence was finalized in February, the man did not abide by the prosecution's demand that he present himself. On one occasion, he attempted to use violence against personnel from the district prosecutors office when they came to imprison him.

Nevertheless, they did not wear knife-proof vests when they attempted to imprison him, and police officers accompanying them had no guns with them. It is safe to say that such a lenient attitude allowed the knife-wielding man to escape.

The prosecution's response to the situation following his flight was not at all timely, either.

More than three hours after the man's escape, the district prosecutors office informed local governments in the area. There were also delays in the police authorities' emergency measure of deploying officers, which happened during a period of time that coincided with the hour when children go home from school. Local residents had every reason to raise their voices in anger.

Review legislation

There is also room for controversy over the appropriateness of a court decision to release the man on bail.

The man had been charged with such crimes as theft, bodily injury and a violation of the Stimulants Control Law. During his trial in the court of first instance, the man was released on bail. He was given an unsuspended prison sentence and was taken into custody. However, he was released on bail again after appealing to a higher court.

From the standpoint of defending their rights, there is a growing tendency to flexibly permit defendants to be released on bail. Unnecessarily detaining defendants must be avoided as a matter of course. However, courts should judge whether each defendant deserves to be released on bail by closely examining the possibility of them escaping or destroying evidence.

This latest case has illustrated institutional problems related to the action of imprisoning people whose unsuspended prison sentences have been confirmed. As of the end of last year, there were a total of 26 people who had fled to avoid imprisonment.

The administrative work aimed at sending those found guilty to prison is based on the view that human nature is fundamentally good — that is, it is thought they will abide by demands for them to present themselves. Even if they go missing, it is not compulsory to inspect related matters such as records of their incoming and outgoing mobile phone calls.

If defendants or convicted prisoners run away from such institutions as detention houses and prisons, they are charged with the crime of escape. However, this does not apply to offenders who have escaped before being imprisoned. There is no penalty for those who have not abided by a demand to present themselves, either. All of these points can be described as flaws in the legislation.

If offenders whose unsuspended prison sentences have been finalized can avoid the execution of their penalties, the foundation of criminal justice will be shaken. The Supreme Public Prosecutors Office has established an inspection team with a view to preventing a repeat of the incident. The team should examine whether the current system has any problems that must be reviewed.

(From The Yomiuri Shimbun, June 25, 2019)

日本語

*Facebook*          Like 0      Share

*Twitter*                        ツイート

*Google+*

*Hatena Bookmark*                0

*Evernote*                 

*linkedIn*

                              Share

## Related

China's bid for greater influence in South Pacific a cause for concern

Universities should focus on boosting research quality, not global ranking

Deciding appropriate share for hosting U.S. bases needs calm talks

Restoration work on castles provides source of pride, promotes tourism

## Sponsored Contents

 **Man Who Predicted Trump's Win Makes Another Prediction**
(betterlyfe.news)

 **New 750mg CBD Gummy 5Xs Better Than Hemp**
(health-repair.com)

 **Doing This Every Morning Can Snap Back Sagging Skin (No Creams Needed)**
(innerskinresearch.com)

 **[Pics] Pole Vaulter Allison Stokke Years After The Photo That Made Her Famous**
(New Arena)

 **Toenail Fungus? Try This Tonight**
(Fungus Eliminator)

**People Born 1948-1979 With No Life Insurance Are In for A Treat This May**
(Comparisons.org)

Recommended by



Food

Travel

Voices from Japan

Asia News



## Culture & Lifestyle

## Experiencing Japan
The Japan News staff share their experiences

## Manga & Anime



## Troubleshooter
Giving advice for over a century

## Reviews

## Gift Suggestions

## Language Learning



A unique archive, all the way back to 1874
The Yomiuri Shimbun and The Japan News

## Opinion & Analysis

## Comic Strip: Neko Pitcher

## Tokyo 2020



*Weather*

**Tokyo** 12:00 pm

Customize

# 26.2°C

| Tue | Wed | Thu | Fri |
|-----|-----|-----|-----|
| 23° | 24° | 26° | 26° |
| 17.9° | 16° | 17° | 16° |



See the history of
WASEDA University
As is today



Capturing the age,
focusing on the future
Chuo University

Advertising with The Japan News

SCROLL TO TOP

Web Site Policies

- Web Site Policies Top
- Privacy Policy Statement
- Copyrights
- Linking Policy
- Contact us

Media Data

- The Yomiuri Shimbun
- The Japan News
- Advertising with The Japan News Website
- About Us
- Subscribe Newspaper

Connect

- Facebook
- Twitter (English)
- Twitter (Japanese)
- Twitter (TheJapanNews Editor)

Links

- The Japan News Partners

- Waseda Online
- Chuo Online
- Nippon TV
- YTV
- ANN
- YOMIURI College of Tokyo
- YOMIURI COLLEGE OF CAR MECHANIC

© The Yomiuri Shimbun

# The Asahi Shimbun | Asia & Japan Watch

# Ghosn with the wind: Ministry to tighten laws to nix bail jumps

By HIROYOSHI ITABASHI/ Staff Writer

January 8, 2020 at 18:10 JST



A security camera captures the moment a woman on bail flees in a car to avoid being taken into custody and the car hits a prosecutors office official in Kishiwada, Osaka Prefecture, in October. (Provided by a resident)

The clandestine escape from Japan by Carlos Ghosn was a factor in a decision by the Justice Ministry to accelerate efforts to prevent bail jumping by making it easier to investigate and charge escapees.

The beleaguered former Nissan Motor Co. chief slipped out of his monitored home in Tokyo on Dec. 29 and fled to Lebanon by private jet, apparently by hiding in oversized luggage.

It was an embarrassing cap to a string of bail-jumping incidents last year in Osaka and Kanagawa prefectures.

Justice Minister Masako Mori on Jan. 7 indicated planned legal reforms that would expand the application of "crime of escape" under the Criminal Law to accused individuals out on bail.

Under current law, "crime of escape" only applies to jail or detention facility escapees, not those who flee while out on bail.

Mori said the ministry will soon ask the Legislative Council, an advisory panel to the justice minister, to discuss the issue and submit proposals. The ministry plans to submit a bill to revise relevant laws to the Diet based on the discussions.

Last year marked a series of getaways by defendants whose prison terms were finalized or bail was forfeited while they were free on bail.

In one case last June, a man in Kanagawa Prefecture who received a jail sentence while on bail but had not been taken into custody for more than four months, threatened officials of the prosecutors office with a kitchen knife after they arrived at his home and fled in a car.

Ghosn's dramatic escape also prompted the ministry to strengthen measures to monitor defendants released on bail.

The Legislative Council is expected to discuss ways to grant authority to law enforcement officials to investigate bail jumpers, search their homes and confiscate call logs.

EXHIBIT

C

exhibitsticker.com

The council is also expected to consider a policy to make such defendants wear a global positioning system (GPS) device.

Ghosn was awaiting trial over alleged financial misconduct at the time of his disappearance.

Under the Code of Criminal Procedure, defendants are not required to appear for an appeals court decision, making it impossible for prosecutors to immediately detain a defendant even if a prison sentence is served.

Figures show that as of the end of 2018, 26 individuals fled from authorities after their prison terms were finalized while they were out on bail.

In light of this, the Justice Ministry plans to make it obligatory for defendants to be present for an appeals court decision.

---

Copyright © The Asahi Shimbun Company. All rights reserved. No reproduction or republication without written permission.

# Japan :Ministry eyes ways to stop bail jumpers

by The Yomiuri Shimbun

**TOKYO (The Japan News/ANN) - Following a series of escapes by defendants and others while out on bail, the Justice Ministry plans to strengthen measures to prevent such flights, The Yomiuri Shimbun has learned.**

Following a series of escapes by defendants and others while out on bail, the Justice Ministry plans to strengthen measures to prevent such flights, The Yomiuri Shimbun has learned.

According to sources, the ministry is considering expanding the scope of so-called crimes of escape, which currently apply only to people who flee from jail and other facilities, and establishing such measures as penalties for accused persons who refuse to obey court summons while out on bail.

The ministry will consult in February at the earliest with the Legislative Council, an advisory body to the justice minister, about revisions to laws including the Penal Code.

Under the Penal Code, "crimes of escape" apply only to the escapes of suspects, defendants and others who are confined in penal facilities such as jails and detention facilities at police stations. The penalty is a maximum of one year in jail.

Since people who run away while out on bail cannot be prosecuted for their crimes, the Legislative Council will apparently discuss the application of the crime of escape to such cases.

In addition, the Criminal Procedure Code stipulates that a person who is summoned by the court as a witness but does not appear in court without a justifiable reason will be punished by imprisonment for up to a year or other penalties. However, there are no penalties for defendants and others who do not respond to court summons while out on bail.

The Legislative Council is expected to discuss the revision of the Criminal Procedure Code to establish similar penalties for defendants out on bail, the sources said.

On Dec. 31, it was learned that former Nissan Motor Co. Chairman Carlos Ghosn, 65, had fled Japan. If the laws are revised as planned, crimes of escape will apply to cases like that of Ghosn, who had been out on bail.

However, it is difficult to physically detain a foreigner who has fled overseas. Some say accused persons should be required to wear global positioning system (GPS) devices, in order to strengthen the monitoring of their movements after being released on bail. The Legislative Council likely will consider such issues.

In recent years, the courts have tended to actively release accused persons on bail. According to the Supreme Court, the percentage of cases in which an accused person was granted bail by a lower court before the ruling increased from 14% in 2008 to 32% in 2018.

The number of cases in which defendants out on bail were indicted in other cases has been also on the rise. According to a white paper on crime, the number of such cases increased from 102 in 2008 to 258 in 2018, an increase of about 2.5 times.

EXHIBIT

D

exhibitsticker.com

In Kanagawa Prefecture, a man whose prison sentence was finalized after being released on bail swung a kitchen knife at officials of the Yokohama District Public Prosecutor's Office, who had gone to detain him, and escaped in a car in June last year. After that case, the Justice Ministry began considering the necessity to revise relevant laws.

## Photos

No photos has been attached.

# Japan to make escapes by defendants on bail punishable

07 Jan 2020



Japan's Justice Minister Masako Mori speaks during a press conference on former auto tycoon Carlos Ghosn after he fled Japan to avoid a trial, in Tokyo on January 6, 2020. (AFP)

Short Url: https://arab.news/czhrm

TOKYO: Japan will make escapes by defendants out on bail punishable following a series of such getaways, notably by former Nissan Motor Co. Chairman Carlos Ghosn, informed sources said Tuesday.

The Justice Ministry is considering revising the Penal Code to expand the scope of the crime of escape and take other measures. It plans to consult the Legislative Council, which advises the justice minister, as early as next month.

"It's extremely important to prevent escapes by defendants out on bail," Justice Minister Masako Mori told a press conference. "We'll consider so we can consult the Legislative Council as early as possible."

The crime of escape covers prison inmates as well as detained defendants and suspects. A violator faces a prison term of up to a year.

But defendants out on bail, such as international fugitive Ghosn, are not subject to the punishment.

The council will discuss whether it is appropriate for those cases to be covered, the sources said.

Plans to oblige defendants to wear Global Positioning System tracking devices while on bail are also expected to be discussed. Other expected topics include how to monitor defendants fitted with such devices and how to protect their privacy.

Also on Tuesday, the ruling Liberal Democratic Party held a joint meeting of its judicial and foreign affairs divisions and discussed responses to Ghosn's departure to Lebanon. According to a participant, some lawmakers called for using GPS devices.

The ministry was considering preventive measures after a man on bail escaped in Kanagawa Prefecture, south of Tokyo, after his prison sentence became final last year and defendants fled in Osaka Prefecture, western Japan, after seeing their bail revoked.

Jiji Press



# Prosecution measures insufficient for preventing recurrence of escapes

*7:26 pm, August 08, 2019*

**EXHIBIT**

**F**

### The Yomiuri Shimbun

It can be said that the prosecution as an organization was not up to the task of jailing a defendant whose sentence of imprisonment had been finalized after being released on bail.

The prosecution has compiled a report that examines a case in which a man who, in attempting to avoid being jailed, fled with a knife from his house in Kanagawa Prefecture.

He did not abide by the prosecution's repeated demands that he present himself and was expected to be resistant to the prosecution. However, the Yokohama District Public Prosecutors Office did not sufficiently consider assigning personnel and also did not make any arrangements with the police. Despite receiving reports of his flight, the prosecution delayed informing local governments, believing that "the police would decide" on the announcement of his escape.

It is reasonable that the prosecution's report summarized the incident as being caused by insufficient measures on the part of the prosecution and its lack of risk awareness.

To prevent the recurrence of such an incident, the Supreme Public Prosecutors Office cited steps such as preparing and improving manuals and equipment for when the prosecution imprisons a defendant, and establishing a liaison system with local governments. These are all basic measures that the prosecution should already have addressed. It is unlikely that it will really be able to prevent such an incident occurring only with these countermeasures.

In the background of this escape is an increasing number of defendants being released on bail.

The number of defendants — who, like the man in this case, were released on bail until a ruling in the court of second instance was handed down, after being given an unsuspended prison sentence in the court of first instance — was 546 in 2013. But the figure was more than double that in 2018 at 1,109. It included defendants in such serious cases as murders and robberies resulting in bodily injury.

Review conventional steps

There is a view that there is a higher risk of flight if a defendant who has been given an unsuspended prison sentence in the court of first instance is released on bail after appealing to a higher court. As a defendant is not obliged to appear in the court of second instance, unlike the court of first instance, it is expected that he or she could escape and not appear on the date of the ruling.

Courts should more carefully decide on the appropriateness of and conditions for whether a defendant who has been given an unsuspended prison sentence is released on bail. It should also consider obliging a defendant to appear on the date of a ruling in the court of second instance, and make it possible to jail the defendant on the spot when they are given an unsuspended prison sentence.

It is problematic that it takes too much time to jail a defendant after they are given an unsuspended prison sentence. There were 60 defendants in 2018 who were not jailed until more than three months after their sentences of imprisonment were finalized in a higher court. There were also not a few former defendants who were temporarily missing for reasons such as fleeing overseas.

The longer the period after finalizing a sentence of imprisonment is, the smaller the effect of reflection on their crime and the higher the hurdles for imprisonment become. The prosecution must make efforts to swiftly bring defendants into custody.

There is a flaw in the legislation in that the crime of escape in the Criminal Code, which is intended for convicted prisoners and others, is not applied to defendants released on bail.

Some states in the United States and Canada make it obligatory, as a condition for release on bail, for the defendant to wear a global positioning system tracking device. In order to prevent escapes, it is hoped that effective steps will be made with reference to overseas examples.

(From The Yomiuri Shimbun, Aug. 8, 2019)



| | | |
|---|---|---|
| *Facebook* | Like 5 | Share |
| *Twitter* | | ツイート |
| *Google+* | | |
| *Hatena Bookmark* | | 0 |
| *Evernote* | | CLIP |
| *linkedIn* | | Share |

## *Related*

China's bid for greater influence in South Pacific a cause for concern

Universities should focus on boosting research quality, not global ranking

Deciding appropriate share for hosting U.S. bases needs calm talks

Restoration work on castles provides source of pride, promotes tourism

## *Sponsored Contents*


**Man Who Predicted Trump's Win Makes Another Prediction**
(betterlyfe.news)


**New 750mg CBD Gummy 5Xs Better Than Hemp**
(health-repair.com)


**[Pics] Demolition Workers Made A Historic Discovery While Knocking Down A House**
(Magellan Times)

**If You Have Toenail Fungus, Do This Immediately (Genius!)**
(Clear Nail Plus)

**People Born 1948-1979 With No Life Insurance Are In for A Treat This May**
(Comparisons.org)


**[Pics] When Engineers Drained The Niagara Falls In 1969, They Revealed A Gruesome Sight**
(Maternity Week)

Recommended by



Food

Travel

Voices from Japan

Asia News



Culture & Lifestyle

## Experiencing Japan
The Japan News staff share their experiences

## Manga & Anime



## Troubleshooter
Giving advice for over a century

## Reviews

## Gift Suggestions

## Language Learning



## Opinion & Analysis

## Comic Strip: Neko Pitcher

## Tokyo 2020



---

*Weather*

**Tokyo** 03:00 pm

Customize

# 25.6°C

| Tue | Wed | Thu | Fri |



See the history of
WASEDA University
As it is today



Capturing the age,
focusing on the future
Chuo University



SCROLL TO TOP

Web Site Policies

- Web Site Policies Top
- Privacy Policy Statement
- Copyrights
- Linking Policy
- Contact us

Media Data

- The Yomiuri Shimbun
- The Japan News
- Advertising with The Japan News Website
- About Us
- Subscribe Newspaper

Connect

- Facebook
- Twitter (English)
- Twitter (Japanese)
- Twitter (TheJapanNews Editor)

Links

- The Japan News Partners
- Waseda Online
- Chuo Online
- Nippon TV
- YTV
- ANN
- YOMIURI College of Tokyo

- 

# YOMIURI COLLEGE OF CAR MECHANIC

© The Yomiuri Shimbun