```
            UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF MICHAEL L. TAYLOR | No. 20-mj-1069-DLC |
| IN THE MATTER OF THE EXTRADITION OF PETER M. TAYLOR | No. 20-mj-1070-DLC |

**EXTRADITION CERTIFICATION AND ORDER OF COMMITMENT**

CABELL, U.S.M.J.

I. **INTRODUCTION**

The United States seeks to extradite Michael L. Taylor and Peter M. Taylor (the "respondents") to Japan to face a charge of harboring or enabling the escape of a criminal, in violation of Article 103 of the Japanese Penal Code. The extradition proceedings were commenced by the United States pursuant to 18 U.S.C. § 3184 and the Extradition Treaty between the United States and Japan, signed on March 3, 1978, and entered into force on March 26, 1980 ("Treaty").

On May 6, 2020, this court issued a complaint for the provisional arrests of the respondents with a view towards extradition at the request of the United States, acting on behalf of the Government of Japan. (D. 1).[1] The complaint indicates that

---

[1] Citation to the extradition dockets refer to the docket entries in *In the Matter of the Extradition of Michael L. Taylor*, Case No. 20-MJ-1069 (D. Mass).

the Government of Japan issued warrants for the respondents' arrests for their involvement in the escape of Carlos Ghosn from Japanese authorities. Ghosn, who was under indictment in Japan for financial crimes, fled to Lebanon, a country with whom Japan has no extradition treaty, effectively shielding him from prosecution.

On May 20, 2010, the respondents were arrested in Massachusetts and, after a detention hearing, were ordered to be held without bail pending the outcome of their extradition hearing. (D. 41). The respondents sought an emergency writ of habeas corpus and injunctive relief, which was denied. *See Taylor v. McDermott*, No. 20-cv-11272 (D. Mass. 2020).

## II. **FINDINGS**

On August 28, 2020, this court held an extradition hearing for both respondents pursuant to 18 U.S.C. § 3184. International extradition proceedings are governed by 18 U.S.C. § 3181 et seq. and by treaty. In applying an extradition treaty, the court is to construe it liberally in favor of the requesting nation. *See Factor v. Laubenheimer,* 290 U.S. 276, 293-94 (1933). The extradition court's role is not to determine guilt or innocence, but rather whether the following elements have been satisfied in order to support extradition of the accused: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable

treaty is in full force and effect; (4) the crime(s) for which surrender is requested is/are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. *See Fernandez v. Phillips,* 268 U.S. 311, 312 (1925).

In considering the evidence presented by the Government of Japan as contained in the extradition documents submitted in support of the extradition request, the evidence offered by the respondents, the Extradition Treaty between the United States and Japan, and the applicable law, the court finds that the terms of the Treaty and 18 U.S.C. § 3184 have been satisfied with respect to the Taylors' extradition to Japan. More specifically, the court finds as follows.

### *1) Authority of the Court Over the Proceedings*

The parties agree, and this court finds that it has subject-matter jurisdiction over these proceedings. 18 U.S.C. § 3184. Section 3184 provides that:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States ... may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence

> of criminality may be heard and considered.... If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention .... *Id.*

Id. Further, magistrate judges in the District of Massachusetts are authorized by local rule to "[c]onduct extradition proceedings, in accordance with Title 18, United States Code, Section 3184." D. Mass. Local Magistrate Rule 1(e).

### 2) Jurisdiction Over the Respondents

The parties agree, and the court finds that it has jurisdiction over the respondents. Section 3184 gives the court jurisdiction over a fugitive found within the court's jurisdiction who has committed crimes in a foreign nation that are covered by an extradition treaty set forth in section 3181. The extradition treaty between the United States and Japan is included in section 3181. The court finds support in the record that the respondents are the persons who appeared before the court and are the ones against whom the instant charges are pending. The respondents also agree that they are the ones against whom the present charges are pending.

### 3) Treaty in Full Force and Effect

The parties agree, and the court finds that there is an

4

extradition treaty (Treaty) in full force and effect between the United States and Japan, for all purposes of the extradition proceeding.  18 U.S.C. §§ 3181 and 3184.

### 4) *Crime Covered by the Treaty*

The parties agree, and the court finds that the charges for which extradition is sought are crimes pursuant to both Japanese and United States law and covered by the Treaty.

Article I of the Treaty provides for the return to Japan of persons found in the United States who are sought by Japan for prosecution, trial or to execute punishment for any offense specified in Article II of the Treaty.  Article II of the Treaty provides for extradition for offenses listed in an annexed schedule which includes an offense relating to obstruction of justice, including harboring criminals.  The respondents have been charged for their involvement in harboring or enabling the escape of someone charged with a crime, in violation of Article 103 of the Japanese Penal Code.  This offense would also be subject to criminal prosecution under various United States statutes, including among others 18 U.S.C. § 1073 and 18 U.S.C. §§ 3148(a) and 401.

### 5) *Probable Cause that the Respondents Committed the Offenses*

Thus, the only issue left for the court is to determine whether there is probable cause to believe that the respondents committed the offenses charged.  The evidence from which that

determination is to be made is the evidence contained in Japan's extradition request. To certify an extradition warrant, the magistrate judge must find that there is "probable cause" or "reasonable grounds" to believe the individual is guilty of the crime charged. *See Fernandez v. Phillips,* 268 U.S. 311, 312 (1925); *see also Shapiro v. Ferrandina*, 478 F.2d 894, 904-05, 913-14 (2d Cir. 1973). A magistrate judge applies the same standard of probable cause in international extradition hearings as used in preliminary hearings, in federal criminal proceedings. *See Castro Bobadilla v. Reno*, 826 F.Supp. 1428, 1433 (S.D. Fla. 1993). The evidence is sufficient and probable cause is established if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).

Factually speaking, the parties agree, and the court finds support in the record, that the respondents committed the conduct underlying the charges against them. Specifically, the court finds that there is probable cause to believe that Peter Taylor traveled to Japan at least three times and visited Ghosn on at least seven occasions in the months preceding the escape. Then, on December 28, 2019, Peter Taylor arrived in Tokyo and checked into a room at the Grand Hyatt. Ghosn then arrived at the Grand Hyatt and met with Peter Taylor for about an hour. On December 29, 2019, Michael Taylor and a third individual, George-Antoine Zayek, traveled on

a private jet from Dubai, United Arab Emirates, to Japan's Kansai International Airport. At Kansai, Michael Taylor and Zayek carried large black audio equipment-style cases and told airport workers that they were musicians. From Kansai, Michael Taylor and Zayek checked into the Star Gate Hotel Kansai. After placing the cases in one of their rooms, they caught a train bound for Tokyo at about noon. At 2:30 p.m., also on December 29th, Ghosn left his home without luggage and walked to the Grand Hyatt, where he apparently changed into clothing from luggage that had been dropped off and received by Peter Taylor earlier in the day. Michael Taylor and Zayek arrived in Tokyo at about 3:30 p.m. and went to Peter Taylor's room at the Grant Hyatt.

Shortly thereafter, the Taylors, Ghosn, and Zayek left Peter Taylor's room at the same time, each carrying luggage. Peter Taylor then traveled to the Narita Airport to catch a flight to China. However, Ghosn, Michael Taylor, and Zayek caught a train back to the Kansai Airport area and returned to the Star Gate Hotel Kansai at approximately 8:15 p.m. At about 10:00 p.m., Michael Taylor and Zayek left the hotel with luggage, including the two audio-style cases, and went to Kansai Airport. Surveillance footage did not show Ghosn leaving the hotel. Once at the airport, the baggage of Michael Taylor and Zayek was loaded onto their private jet without being checked. The jet departed for Turkey at about 11:00 p.m. On December 31, 2019, Ghosn announced that he

was in Lebanon.

Although the respondents do not dispute the foregoing facts, they argue that those facts do not make out a violation of Article 103. This court finds that they do, however.

Among other things, Article 103 makes it a crime to "harbor[] or enable[] the escape of another person who has...committed a crime." As this court stated previously in considering the issue in the context of the respondents' motion for bail, the respondents' conduct literally brings them squarely within the purview of this portion of Article 103 because they harbored or enabled the escape of Carlos Ghosn, who had allegedly committed a crime. A separate court reached the same result after considering the issue in the context of the respondents' unsuccessful motion for injunctive relief. *See Taylor v. McDermott*, No. 20-cv-11272 (D. Mass. 2020) at D. 44 ("Petitioners have not shown a high likelihood of success in their argument [that] Article 103 does not prohibit interfering with the Japanese criminal justice system by harboring Ghosn and enabling Ghosn to elude discovery by law enforcement and escape judgment from a Japanese court.").

To be sure, the respondents do not really take issue with the court's interpretation of Article 103 as it is written. Rather, they argue that the English translation of Article 103 is misleading because it does not accurately convey the true required elements of the offense. They argue that a proper reading of the

8

actual Japanese text of Article 103 requires one to do more than merely harbor or enable the escape of someone who has committed a crime to violate the provision; it requires one to harbor or enable the escape of someone who either was in physical confinement or was actively being pursued by law enforcement for a recently committed crime.  They contend that they did not violate Article 103 under this interpretation because, although Ghosn was on release for charges for which he had been indicted, he was neither in physical confinement nor actively being pursued by law enforcement for a crime at the time the respondents helped him flee Japan.

Despite strong urging, however, the court declines to consider the respondents' argument.  Even assuming an extradition court has both the authority to resolve disputed issues of foreign law, and the hopeful belief it could do so competently, that does not mean it should.  "[E]xtradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law," and American extradition courts therefore have consistently cautioned against doing so, particularly to invalidate arrest warrants.  *See e.g., Noeller v. Wojdylo*, 922 F.3d 797, 805 (7th Cir. 2019); *Marzook v. Christopher*, No. 96 CIV. 4107 (KMW), 1996 WL 583378, at *5, n.4 (S.D.N.Y. Oct. 10, 1996) (citing *Peters v. Egnor*, 888 F.2d 713, 716 (10th Cir. 1989) ("we think that an extensive investigation of [the requesting country's] law would be

inappropriate"); *Matter of Assarsson*, 635 F.2d 1237, 1244 (7th Cir.1980), *cert. denied*, 451 U.S. 938 (1981) ("We are also not expected to become experts in laws of foreign nations.").

Moreover, where a Japanese court has now twice issued warrants alleging that the respondents' conduct violated Article 103, and the Government of Japan has through declarations and case citations presented a reasonable interpretation of Article 103 under which the respondents' conduct would constitute a violation of that provision, the prevailing view is that the extradition court should defer to the foreign country's interpretation of its own laws. *See In Matter of Extradition of Pineda Lara*, No. 97 CR. MISC. 1 (THK), 1998 WL 67656, at *7 (S.D.N.Y. Feb. 18, 1998) ("a judge in the United States should therefore defer to a foreign judicial officer's or government official's reasonable interpretation of a statute where the statute is subject to more than one interpretation"); s*ee also Matter of Extradition of Lui*, 939 F.Supp. 934, 949 (D. Mass. 1996) (comity and common sense "suggest[] that the foreign judicial officer should be presumed to be more knowledgeable than the judicial officer in the United States about the foreign law."). That is the course the court chooses to follow here. Accordingly, the court finds that there is probable cause to believe that the respondents violated Article 103 of the Japanese Penal code.

**III. CONCLUSION**

Based on the foregoing, this matter is certified to the Secretary of State in order that warrants may issue, upon the requisition of the proper authorities in Japan, for the surrender of Michael L. Taylor and Peter M. Taylor on the charge of harboring or enabling the escape of a criminal, in violation of Article 103 of the Japanese Penal Code, according to the provisions of the Treaty between the United States and Japan.

No later than seven days after the date of this decision, the government shall file a proposed extradition certification and order of commitment.

The court will then order that the Clerk of Court forward a certified copy of this Extradition Certification and Order of Commitment, together with a copy of all the evidence taken before this Court, to the Secretary of State, Department of State, to the attention of the Office of the Legal Adviser.

The Taylors shall remain in the custody of the U.S. Marshal for this District, to be held pending final disposition of this matter by the Secretary of State, and pending each respondent's potential surrender to the government of Japan.

**SO ORDERED**.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: September 4, 2020